# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 22-628V

|  |  |
|---|---|
| GISELLE LEWIS,<br><br>               Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br><br>Filed: August 28, 2025 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Mitchell Jones, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDING OF FACT REGARDING ONSET AND SITUS[1]

On June 7, 2022, Giselle Lewis filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a right shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on September 22, 2020. Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons set forth below, I find it more likely than not that the subject vaccination was administered in Petitioner's right deltoid, and that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

## I.    Relevant Procedural History

Respondent filed his Rule 4(c) Report in December 2023, arguing that Petitioner had failed to show a Table injury because her medical records did not support the conclusion that the onset of her pain occurred within 48 hours of vaccination. Respondent's Report at 6, ECF No. 27 (internal citations omitted). Respondent further argued that Petitioner's medical records are "incongruent as to the site of vaccine administration." *Id.* at 8. More so, Respondent contended Petitioner cannot establish that her symptoms were limited to the vaccinated shoulder, or that there is no other condition or abnormality present that would explain her post-vaccination condition. *Id.* at 8-9.

I accordingly ordered the parties to submit briefings regarding Petitioner's eligibility to entitlement. Non-PDF Order, docketed Mar. 22, 2024. Petitioner thereafter filed a motion to amend the briefing schedule and requested to retain an expert to opine on the medical issues in this case (e.g., whether Petitioner's symptoms were limited to the vaccinated shoulder and whether another condition would explain her post vaccination symptoms). ECF No. 28. I granted in part and denied in part Petitioner's request and reiterated that the retention of experts is not generally permissible in SPU and ordered briefings regarding the factual issues in this case, only (e.g., onset and situs). Non-PDF Order, docketed May 28, 2024.

In response, on June 27, 2024, Petitioner submitted updated medical records, an addendum to a medical record exhibit, supplemental affidavits, and a Brief regarding the onset of symptoms and site of vaccine administration. ECF Nos. 29-30. In August 2024, Respondent filed his Response Brief. ECF No. 31. Petitioner filed a Reply thereafter on September 9, 2024. ECF No. 32. The factual issues of onset and site of vaccine administration are thus now ripe for consideration.

## II.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.    Relevant Factual Evidence[3]

Petitioner received the subject flu vaccine in her right deltoid on September 22, 2020, at her local pharmacy. The vaccine administration record reflects a handwritten, encircled "R" as the vaccination situs – consistent with Petitioner's claim. Ex. 1 at 2.

In her original signed declaration (authored in July 2022), Petitioner attests that she "received the flu vaccine in [her] right shoulder on September 22, 2020." Ex. 10 ¶ 2. She explains that "[t]he next day after getting the flu shot, [she] began feeling weakness in [her] right shoulder," and she continues to have "a lot of pain in [her] shoulder that goes all the way down to [her] fingers." *Id.* ¶¶ 2-3.

More so, in her supplement declaration (drafted in June 2024), Petitioner specifically "remember[s] the injection got jammed into [her] right shoulder, and [Petitioner told the administrator] that was too hard" but the administrator told her that was normal. Ex. 14 ¶ 1. She explains that "[l]ater on that night[,]" she noticed she "could barely raise [her] whole right arm up due to the stiffness and severe pain." *Id.* ¶ 2. By the next morning, the pain was worse and her whole right arm and shoulder were immobile. *Id.* ¶ 3. She thus called her pharmacy where she received the vaccination to report her right shoulder symptoms and was told an incident report would be filed. *Id.*

Approximately two weeks post-vaccination, on October 5, 2020, Petitioner had a scheduled visit with her primary care provider ("PCP") for unrelated hypertension, allergies, GERD, knee pain, and facial nerve damage. Ex. 2 at 24. Petitioner did not report shoulder pain during this visit. *See id.* at 24-29.

Although the medical records for the October 5th visit do not contain right shoulder complaints, Petitioner asserts that she "remember[s] telling [her PCP] about [her] right shoulder pain since the [f]lu injection" during that visit. Ex. 14 ¶ 4. According to Petitioner, her PCP "hit a silver tool against [her] right shoulder to see if it would jump" (but it was not jumping), so the PCP told Petitioner to mention the complaints to her orthopedist during her next visit. *Id.*

On October 7, 2020, Petitioner saw her orthopedist to follow up regarding her pre-existing right knee pain and prior knee replacement surgery. Ex. 2 at 146. The visit notes also do not contain reports of shoulder pain. *See id.* at 146-47.

---

[3] Only those facts relevant to site of vaccination and onset will be discussed herein, though other facts may be provided as necessary.

Despite a lack of shoulder complaints in the October 7th orthopedic visit notes, Petitioner similarly contends that she told her treater "that [her] shoulder started hurting right after receiving the [f]lu injection." Ex. 14 ¶ 5. Petitioner attests that her orthopedist "examined [her] right shoulder, tried to move it around, and told [her] to continue taking Tylenol to see if that help[ed]." *Id.*

The following week, on October 13, 2020, Petitioner had a visit for gynecological concerns. Ex. 2 at 18. She did not report shoulder complaints at that time. *See id.*

Petitioner's pharmacist completed a VAERS report on October 19, 2020 (not quite a month after vaccination). Ex. 8 at 1. The form lists the "date and time [that the] adverse event started" as "09/22/2020." *Id.* The form also contains a notation that the subject flu vaccine was administered in the "right arm." *Id.* Under the description of events, the form states that "[t]he evening [Petitioner] received the vaccine [she] began experiencing pain, stiffness, and numbness throughout the right arm from the shoulder to the hand[; she] describes the pain as throbbing and radiating from the shoulder to the hand." *Id.* The form also describes numbness and "loss of coordination with the right arm including the hand[,]" and that the pain was worse at night and upon awakening. *Id.*

On November 5, 2020 (now 41 days post vaccination), Petitioner went to the ER complaining of "right shoulder and arm pain." Ex. 3 at 53. Specifically, she reported that "this pain began after she got a flu shot on 9/23/2020." *Id.* She explained that "[a]fter the flu vaccine was given she experienced a burning sensation with pain" and "when she got home her arm was weak and she was unable to reach for things in her cabinet." *Id.* More so, she "described the pain as burning and stabbing and it radiates from her right shoulder down her arm and to her fingertips[;]" she also endorsed right arm weakness, made worse by movement, and pain rated at a 10/10. *Id.*

Upon examination, Petitioner exhibited limited range of motion ("ROM"), tenderness, and pain in the right shoulder, and she was unable to flex or abduct the right arm. Ex. 3 at 55. In light of the history and examination findings, the ER physician raised the suspicion for a peripheral neuropathic cause. *Id.* at 56. Right shoulder, humerus, and cervical spine x-rays showed "marked degeneration and osteophytes at C3-4, C4-5 and C5-6 as well as mild right AC joint degeneration." *Id.* The physician felt the "[e]xam [was] most consistent with radiculopathy." *Id.*

Petitioner followed up with her orthopedist on December 4, 2020. Ex. 6 at 120. The visit notes state that Petitioner was an established patient with a new problem of right shoulder pain. *Id.* Specifically, she reported that she "received a flu shot on 9/23/2020 . . . and following this experience[d] significant increased pain in the shoulder along with

5

weakness and difficulty with using her arm for functional activity." *Id.* An examination of the right shoulder was consistent with reduced ROM, tenderness to palpation, and reduced sensation throughout the arm. *Id.* at 121. The orthopedist assessed Petitioner with Parsonage-Turner syndrome of the right upper extremity. *Id.* The orthopedist told Petitioner that "this is a [sic] inflammatory nerve condition that can be related to her vaccination." *Id.*

Per her orthopedist's recommendation (on December 17, 2020), Petitioner saw a neurologist for "pain shooting up and down her *left* upper extremity after flu shot." Ex. 5 at 43 (emphasis added). Petitioner stated that the "pain occurred within a day of receiving the flu vaccination in her left deltoid." *Id.* The neurologist noted that the pain was "located mainly in the distal lateral left arm with radiation into the proximal left forearm and into the left shoulder girdle. The pain is intense and limits her [ROM] around the left shoulder and elbow joint." *Id.* A physical examination of the left shoulder revealed limited ROM due to pain, especially with shoulder abduction and elbow flexion. *Id.* at 45. The neurologist did not "think that the pain . . . is directly from the vaccination, as the flu vaccination was in the left deltoid and intense pain limits movement not only around the left shoulder joint, but also around the left elbow." *Id.* at 46. And, the neurologist opined, "[i]ntense pain after a vaccination may be due to Parsonage-Turner syndrome." *Id.*

Petitioner addresses the visit notes referring to left shoulder pain in her supplemental declaration. She asserts that such entries are "incorrect." Ex. 14 ¶ 6. Rather, she explains that she told the neurologist that her "right shoulder ha[d] been hurting ever since the night of getting the flu shot." *Id.* As support, Petitioner notes that her neurologist ordered an EMG of the *right* arm/shoulder, which she later underwent. *Id.* (emphasis added). Petitioner also attests that she called the neurologist's office to alert them to this typographical error and in response the office stated they would "try to amend the record." *Id.*

Petitioner submitted an "addendum" to these December 17, 2020 visit notes, authored by her treating neurologist on June 16, 2024 – nearly *four years* after the visit in question. Ex. 16 at 3. The addendum states that Petitioner "sent [the neurologist's office] a message through the patient portal after reviewing this note, pointing out that the pain that [the neurologist spoke] of in this note was on the right, and not on the left." *Id.* The treater continued, "[s]he is correct," the examination findings and Petitioner's pain "were on the right, and no [sic] on the left." *Id.*

On December 29, 2020, Petitioner began physical therapy ("PT") for "R [sic] shoulder pain [status post] flu shot." Ex. 7 at 190. The physical therapist noted Petitioner

6

had decreased active ROM but normal passive ROM. *Id.* She attended numerous visits thereafter, all for right shoulder complaints. *See id.* at 133.

At the direction of her neurologist, Petitioner underwent an EMG of the *right* upper extremity on January 5, 2021. Ex. 5 at 64 (emphasis added). The history noted "right arm pain" that "began back in October 2020 after she received the flu shot." *Id.* More so, the pain was initially "in the muscle but then spread to go underneath the arm and down into the hand . . . with numbness of the 4th and 5th digits" and weakness. *Id.* The EMG findings were felt to be consistent with mild radiculopathy at the C6-C7 level and moderately severe right median nerve entrapment. *Id.* at 64-65.

Petitioner followed up with her orthopedist for right shoulder pain on March 29, 2021. Ex. 6 at 131. She complained of ongoing right shoulder pain. *Id.* Upon examination of the right shoulder, Petitioner exhibited tenderness to palpation with point tenderness over the deltoid. *Id.* at 132. The orthopedist's assessment included "[c]hronic right shoulder pain with suspected Parsonage-Turner syndrome." *Id.*

Petitioner's sister submitted a signed declaration on Petitioner's behalf (authored in June 2024). Ex. 15. She attests that "[a]bout three days after [Petitioner] received the flu shot in her right shoulder . . . [the sister] saw [Petitioner] hold her right shoulder in pain." *Id.* ¶ 1. At that time, Petitioner told her sister that she had pain in her right shoulder "since the night of that [f]lu shot in her right shoulder." *Id.* No other medical records or affidavit/declaration evidence has been submitted regarding the onset of Petitioner's symptoms or vaccine situs.

## IV.    Findings of Fact

### A. Site of Vaccine Administration

Despite Respondent's objections to the contrary (e.g., Resp. at 7-8), the record supports the conclusion that Petitioner's September 22, 2020 flu vaccine was likely administered in her right shoulder, as alleged. As the above-referenced medical entries establish, when seeking medical treatment on essentially every post-vaccination occasion, Petitioner consistently reported right shoulder pain (which she also attributed to her September 2020 flu vaccination), and she underwent diagnostic procedures, PT exercises, and treatment of the right shoulder.[4] *See,* e.g., Ex. 3 at 52-56; Ex. 6 at 120-21; Ex. 8 at 1.

---

[4] This Ruling does not address Petitioner's right arm, elbow, and/or hand complaints and whether such symptoms are related sequela of Petitioner's post-vaccination right shoulder condition.

In fact, the vaccine administration record *itself* memorializes the same site of the administration of Petitioner's flu vaccine as alleged, and it is a handwritten entry. Ex. 1 at 2. I have often noted that it is not unusual for the information regarding situs of vaccination set forth in this kind of document to be incorrect.[5] In many instances, the information regarding situs is recorded prior to vaccination and is not subsequently corrected, even if the vaccine is then administered in the opposing arm.[6] Thus, although such records are unquestionably the first-generated documents bearing on the issue of site, they are not *per se* reliable simply because they come first. In fact, I have previously determined that the very nature of vaccination record creation provides some basis for not accepting them at face value. *See,* e.g., *Rizvi v. Sec'y of Health & Hum. Servs.*, No. 21-881V, 2022 WL 2284311, at *4 (Fed. Cl. Spec. Mstr. May 13, 2022).

At the same time, I routinely give greater weight to vaccination records that are handwritten – meaning those that require specific action on the part of the vaccine administrator, as opposed to those that are automatically generated by a computerized system. *See,* e.g., *Rizvi,* 2022 WL 2284311, at *5; *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020). The vaccine administration form at issue in this case is a handwritten entry – that is *consistent* with Petitioner's assertions as to vaccine situs.

Quite literally the only evidence that contradicts a favorable finding as to right arm situs (and all Respondent relies on in contesting this requirement) is the entry from Petitioner's December 17, 2020 neurology visit noting *left* arm complaints from a vaccine administered in that arm. Ex. 5 at 43. Even without relying on the addendum to this record (Ex. 16 at 3, authored in June 2024 at the direction of Petitioner and undoubtedly in pursuit of the instant litigation), when weighed against Petitioner's clear, consistent, and close-in-time reports of right shoulder pain following her receipt of a flu vaccine in that arm, this December 17th entry on its own would not be enough to outweigh the bulk of the evidence that favors Petitioner on this issue. I find by a preponderance of the evidence that Petitioner received her September 22, 2020 flu vaccine in her right arm.

---

[5] *See,* e.g., *Arnold v. Sec'y of Health & Hum. Servs.,* No. 20-1038V 2021 WL 2908519, at *4 (Fed. CL. Spec. Mstr. June 9, 2021); *Syed v. Sec'y of Health & Hum. Servs.,* No. 19-1364V, 2021 WL 2229829, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 28, 2021); *Ruddy v. Sec'y of Health & Hum. Servs.*, No 19-1998V, 2021 WL 1291777, at *5 (Fed. Cl. Spec. Mstr. Mar. 5, 2021); *Desai v. Sec'y of Health & Hum. Servs.*, No 14-0811V, 2020 WL 4919777, at *14 (Fed. Cl. Spec. Mstr. July 30, 2020); *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020); *Stoliker v. Sec'y of Health & Hum. Servs.*, No. 17-0990V, 2018 WL 6718629, at *4 (Fed. Cl. Spec. Mstr. Nov. 9, 2018).

[6] In a recent Ruling by another special master, the pharmacist who had administered the relevant vaccination actually testified that she inputs "left deltoid" into the computer system as a matter of course, without confirming the actual site of vaccination, based upon the assumption that most vaccinees are right-handed. *Mezzacapo v. Sec'y of Health & Hum. Servs.*, No. 18-1977V, 2021 WL 1940435, at *4 (Fed. Cl. Spec. Mstr. Apr. 19, 2021).

**B. Onset**

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

As stated above, Respondent contends that Petitioner's medical records do not support that the onset of her pain occurred within 48 hours of vaccination. *See,* e.g., Resp. at 5-7. But the totality of the evidence supports a favorable onset finding. Thus, the aforementioned medical records, coupled with Petitioner's VAERS report and signed declarations, establish that Petitioner consistently reported to treaters an onset close-in-time to vaccination, that she sought treatment for shoulder pain within 41 days of the September 22, 2020 vaccination, and that she was experiencing symptoms in the relevant timeframe.

The fact that Petitioner sought treatment within less than a month-and-a-half of her vaccination (on November 5, 2020) is partially supportive of Table onset. In other cases, *significantly greater* delays have not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs*., No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs*., No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). But the delay here is not nearly so long.

Likewise, the fact that Petitioner sought care on several occasions between the date of her vaccination and the November 5, 2020 visit – without mentioning right shoulder complaints – does not fully detract from her arguments on onset.[7] Notably, at least one of these visits (on October 7th) was with her orthopedist - to whom it would have been somewhat reasonable to mention other musculoskeletal complaints. But this visit was for pre-existing knee pain, and to follow up regarding a significant procedure (knee replacement surgery). Ex. 2 at 146-47. The same is true of Petitioner's PCP visit (on October 5th) for pre-existing, chronic issues. *Id.* at 24-29. More so, the final intervening

---

[7] I will note that I am not much relying on Petitioner's assertions that she mentioned right shoulder complaints during these intervening visits but that the medical records do not reflect such complaints. Exs. 10, 14. Such statements were made for the purpose of litigation and are not otherwise supported by the contemporaneous medical records. Regardless, as explained, I do not find her failure to mention shoulder complaints during these visits to detract significantly from a finding of 48-hour onset.

visit (on October 13th), was with a specialist for gynecological concerns, and was thus not an occasion to complain of other health issues. *Id.* at 8. Thus, I do not find that the absence of shoulder references in these records to prevent a showing of Table-consistent onset. (I will note, however, Petitioner's ability to seek care for other, non-shoulder related issues during this time is somewhat inconsistent with her declarations attesting to *debilitating* symptoms by that time. *See generally* Exs. 10, 14. This evidence is thus relevant to a determination of damages and is further supportive of the conclusion that Petitioner's SIRVA was mild overall).

In addition, and most importantly, the filed medical record establishes that Petitioner consistently and repeatedly dated her shoulder pain as occurring close-in-time to the subject vaccination – beginning with the October 19, 2020 VAERS report that lists the "date and time [that the] adverse event started" as "09/22/2020[,]" starting on the evening she received the subject vaccination. Ex. 8 at 1. Indeed, the VAERS report (noting onset of pain the same night of the subject vaccination) was authored within one month of vaccination – and is the earliest contemporaneous record of shoulder pain in this case. And it supports 48-hour onset. While applicable Program case law has repeatedly emphasized that VAERS reports are not particularly reliable evidence of *causation*,[8] the same is not true when they are offered to resolve a question of *fact*.

Other subsequent medical records describe onset consistently as beginning on September 22, 2020 (or the next day on September 23rd – a difference that would not impact the resolution of the onset issue) following her receipt of the subject vaccination. *See,* e.g., Ex. 3 at 53 (a November 5, 2020 ER report of "right shoulder and arm pain" that "began after she got a flu shot on 9/23/2020."); Ex. 6 at 120 (a December 4, 2020 orthopedic report that her pain began after she "received a flu shot on 9/23/2020"). These entries – while they may refer to an incorrect vaccination date, or alternatively place an onset as beginning one day after the vaccination – thus describe onset within two days of the September 22, 2020 vaccination. More so, such entries corroborate the consistent contentions made in Petitioner's declarations that her pain began within 48 hours of vaccination. *See* Exs. 10, 14.

---

[8] *See,* e.g., *Analla v. Sec'y of Health & Hum. Servs.*, 70 Fed. Cl. 552, 559 (2006) (stating that the Court has "uniformly upheld the Chief Special Master's concerns about the reliability of VAERS data"); *Ryman v. Sec'y of Health & Hum. Servs.,* 65 Fed. Cl. 35, 39-43 (2005) (affirming the special master's finding that a VAERS report may be biased toward pre-existing notions of adverse events); *Capizzano v. Sec'y of Health & Hum. Servs.,* 63 Fed. Cl. 227, 231 (2004) (affirming that VAERS data has "extremely limited value to prove causation due to the manner in which it is collected, the lack of confirmation of the reported information[,] and lack of any systemic analysis."), *rev'd on other grounds,* 440 F.3d 1317 (Fed. Cir. 2006); *Bender v. Sec'y of Health & Hum. Servs.,* No. 11-693V, 2018 WL 3679637, at *31 (Fed. Cl. Spec. Mstr. July 2, 2018) (noting that "[b]ecause it is a passive reporting system . . . special masters do not typically afford great weight to VAERS data in determining causation" and that special masters' evaluations of the deficiencies of such evidence have been affirmed).

And although some of Petitioner's records suggest an onset beginning at some unspecified time in *October* 2020, or generally after vaccination, I do not find this evidence tips against a favorable onset determination. *See,* e.g., Ex. 5 at 64 (a January 5, 2021 history, prior to EMG, of "right arm pain" that "began back in October 2020 after she received the flu shot."); Ex. 7 at 190 (a December 29, 2020 PT report of "R [sic] shoulder pain [status post] flu shot."). In fact, Petitioner still related her pain as beginning after her receipt of the vaccine in question. These records are thus fairly consistent with her other specific reports of pain beginning after her subject vaccination discussed above and provide further support for 48-hour onset.

## Conclusion

Petitioner has established that she received the subject flu vaccination in her right shoulder, as alleged. Additionally, Petitioner has provided preponderant evidence that the onset of her shoulder pain occurred within 48 hours of vaccination.

Despite my favorable determinations for Petitioner, Respondent's remaining objections to a Table SIRVA (Respondent's Report at 8-9) (not discussed in this Ruling) *could* ultimately require more evaluation – through amplification via experts or otherwise. (There is, for example, evidence in the record of treaters deeming her injury other than a SIRVA). I thus *strongly* encourage the parties to promptly attempt an informal resolution of this claim before expending any further litigative resources on the case. If at any time informal resolution appears unlikely, given that the claim has been pending in SPU for well over one year (having been assigned in September 2022), the parties should propose a method for moving forward, i.e., with a proposed briefing schedule regarding the remaining disputed issues or otherwise stating how they wish to proceed – including requesting transfer out of SPU.

Accordingly, **by no later than Monday, September 29, 2025**, the parties shall file a joint status report confirming the date on which Petitioner conveyed, or intends to convey, a reasonable settlement demand and supporting documentation for Respondent's consideration.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

11